USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/30/2018___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                       :

NEVADA ESPINOZA,             :
                       :

                Plaintiff,   :

                       :              15-CV-1090 (VSB)

       - against -        :
                       :       **OPINION & ORDER**

                       :

NEW YORK CITY DEPARTMENT OF   :
TRANSPORTATION and THE CITY OF  :
NEW YORK,                :
                       :

              Defendants  :
                       :
--------------------------------------------------------X

<u>Appearances</u>:

Nevada Espinoza
Brooklyn, New York
*Pro se Plaintiff*

Amanda Blair
Heather Marie Martone
Jennifer Lilly Koduru
New York City Law Department
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

      Plaintiff Nevada Espinoza, proceeding pro se, brings this action pursuant to Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–97, and the New York City Human Rights

Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 131,[1] against the New York City

---

[1] As I elaborate below, (*see infra* Section IV), in his opposition to Defendants' summary judgment motion, Plaintiff, for the first time, raises several new claims. However, because I find that it is impermissible for Plaintiff to raise these claims for the first time in his opposition, and that Plaintiff has had ample opportunity to amend his complaints, I decline to consider these additional claims.

Department of Transportation ("DOT") and the City of New York ("City," and collectively with the DOT, "Defendants"), claiming that Defendants discriminated against him based on his race, color, religion, and national origin.

Before me is Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion for summary judgment is GRANTED as to Plaintiff's federal and NYSHRL claims, which are dismissed with prejudice. Because I dismiss the federal claims before me, and because Plaintiff's NYCHRL claims are governed under a lower threshold of proof than their federal counterparts, I decline to exercise supplemental jurisdiction. Therefore, Defendants' motion for summary judgment is DENIED as to Plaintiff's NYCHRL claims, and Plaintiff's NYCHRL claims are dismissed without prejudice.

## I.    Background[2]

Plaintiff is a Rastafarian, African-American male from Trinidad and Tobago. (Espinoza Decl. ¶ 2.)[3] He attended, and obtained a degree in Automotive Technology from, the Bronx Community College. (*Id.* ¶ 3.) He has also received accreditations from Pennsylvania State University, San Juan Senior Comprehensive School in Metal Work and Technical Drawing, and the American Society of Engineers. (*Id.*)

---

[2] The facts in this background section are undisputed unless otherwise noted.

[3] "Espinoza Decl." refers to Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment, filed October 20, 2017. (Doc. 75, at 26.) The Declaration was filed, along with Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts pursuant to Local Rule 56.1, as one continuous document in the court's Electronic Case Filing system ("ECF"). I will reference each pleading separately based on its heading although they are contained in one filing on ECF. Further, the Espinoza Declaration's Exhibits do not have continuous page numbers, and when citing to the Exhibits of the Espinoza Declaration I will refer to the document numbers and page numbers assigned to them by ECF.

### A.    *Plaintiff's Appointment as Provisional Supervisor of Mechanics and Mechanical Equipment*

Plaintiff was hired by the DOT in February 2006.[4]  (Defs.' 56.1 ¶¶ 10–11; Pl.'s Resp. 56.1 ¶¶ 10–11.)  On October 20, 2008, Plaintiff was permanently given the title of Auto Mechanic based on his qualifications in an "open competitive civil service list."  (Defs.' 56.1 ¶ 11; Pl.'s Resp. 56.1 ¶ 11.)  Plaintiff's day-to-day responsibilities included "researching technical information for the creation of specification used in the procurement of capital vehicles and equipment, ensuring that the latest technology complies [with] all current safety standards, rules, and regulations, and inspecting and approving all vehicles to ensure compliance with specification requirements."  (Espinoza Decl. ¶ 11.)

In January 2011, Plaintiff was provisionally appointed as the Supervisor of Mechanics and Mechanical Equipment ("SOMME") by John Paterno ("Paterno"), an Executive Director of the DOT's Fleet Services Division.  (Defs.' 56.1 ¶ 12; Pl.'s Resp. 56.1 ¶ 12; Espinoza Decl. ¶¶ 54–55.)  In this role, Plaintiff performed duties such as "insur[ing] that an adequate supply of proper parts is maintained in all stockrooms," "initiat[ing] purchase of parts and equipment," "contact[ing] vendors to ensure that parts, materials and equipment are made to specifications and will be delivered on time," and "develop[ing], recommend[ing], and implement[ing] productivity and cost saving measures."  (Doc. 75-2, at 25.)

During the time that he was a provisional SOMME, Plaintiff was supervised primarily by Paterno.  (Espinoza Dep. 28:20–23.)[5]  In his deposition, Plaintiff stated that Paterno "always

---

[4] There is a dispute as to whether Plaintiff was initially hired under the position "Specification Writer" or "Auto Mechanic," but there is no dispute that he was hired in February 2006.  (*See* Defs.' 56.1 ¶ 10; Pl.'s Resp. 56.1 ¶ 10.) "Defs.' 56.1" refers to Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, filed July 13, 2017.  (Doc. 68.)  "Pl.'s Resp.56.1" refers to Plaintiff's Response to Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, filed October 20, 2017.  (Doc. 75, at 48.)

[5] "Espinoza Dep." Refers to the Deposition of Nevada Espinoza,, starting on page 1 of Document 69-3 and ending on page 3 of Document 69-6.

trie[d] to speak [to him] with a Jamaican accent." (*Id.* at 36:19–37:1; *see also* Espinoza Decl. ¶ 67 ("Paterno would often use a Jamaican accent . . . . He seemed to think I was Jamaican.").) He also stated that Paterno made "comments about ^ ganja" and about "smoking weed." (Espinoza Dep. 36:2–13.) Further, Plaintiff's reviews, which were consistently "outstanding" between 2007 and 2010, changed to "good" the year in which Plaintiff believes Paterno took over management of his unit. (*See* SAC 6; *see also* Doc. 75-6, at 51–54; Doc. 75-7, at 1–6 (exhibiting copies of Plaintiff's evaluations).)[6]

### B. *DOT's Appointment of a Permanent Supervisor of Mechanics and Mechanical Equipment*

In approximately August 2011, the DOT distributed a "notice of examination" notifying DOT employees of the possibility of promotion to a permanent SOMME position. (Espinoza Decl. ¶ 63; *see also* Doc. 75-9, at 5.) The notice stated that the application period was between January 4 and January 24, 2012, that candidates should submit an application online if they believed they were eligible, and that they would be required to sit for a multiple-choice test on April 28, 2012. (Doc. 75-9, at 5.) The notice further stated that in order to qualify to take the examination, the candidate must "hold[] a permanent (not provisional) competitive appointment or appear[] on a Preferred List . . . for the title of Auto Machinist, Auto Mechanic, Auto Mechanic (Diesel), Electrician (Automobile), or Machinist." (*Id.* at 6.) Lastly, candidates were notified that "[i]f [they] pass[ed] the multiple-choice test and [were] marked eligible, [their] name w[ould] be placed in final score order on an eligible list and [they would] be given a list number," and that they would be "considered for promotion when [their] name [was] reached on

---

[6] Defendants state that they "deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiff's beliefs and his interactions with . . . Paterno." (Defs.' Answer ¶ 4.) "SAC" refers to Plaintiff's Second Amended Complaint, filed November 23, 2016. (Doc. 53.) "Defs.' Answer" refers to Defendants' Answer to Plaintiff's Amended Complaint, filed June 1, 2016. (Doc. 25.)

the eligible list." (*Id.* at 7.)

Plaintiff took the exam on April 28, 2012. (Espinoza Decl. ¶ 69.) Thereafter, as stated on the notice, the New York City Department of Citywide Administrative Services ("NYCDCAS") created a list of eligible applicants based on the candidates' scores ("Promotion List"). (Defs.' 56.1 ¶ 13; Espinoza Decl. ¶ 71.) This list was published on February 27, 2013. (Defs.' 56.1 ¶ 13; Espinoza Decl. ¶ 71.) Out of the fifty-eight total DOT employees who passed the exam and were placed on the list, Plaintiff was ranked number fifty-one. (Defs.' 56.1 ¶¶ 14, 17; Espinoza Decl. ¶¶ 73–74; *see also* Doc. 69-8, at 15.)

The DOT interviewed fourteen candidates from the Promotion List in order of test score.[7] (Defs.' 56.1 ¶ 15; Pl.'s Resp. 56.1 ¶ 15.) Ultimately, the list of candidates considered for interviews (the "Interview List") included fifteen candidates who were ranked based on test score and were otherwise qualified for the position (i.e., having a qualifying position and a Class A Commercial Driver's License), (*see* Doc. 69-10, at 6–11), and only reached the candidate who was ranked number eighteen on the Promotion List—at number fifty-one, Plaintiff was not included.[8] According to a copy of the Interview List with a disposition date of June 4, 2013, out of the fourteen candidates who were interviewed, nine were permanently appointed, and the candidate numbered sixteen on the Promotion List was the last candidate that the DOT reached for permanent appointment.[9] (*See* Doc. 75-7, at 17; Doc. 69-10, at 6.)

---

[7] The NYCDCAS later established a more selective list which narrowed the candidates to those that the DOT would interview for the SOMME position based on qualifications and test score ("Selective List"). (Defs.' 56.1 ¶ 13 n.4; Pl.'s Resp. 56.1 ¶ 13.) This included removing those who did not have a Class A Commercial Driver's License—a requirement for the position. (Pl.'s Resp. 56.1 ¶ 13; *see also* Paterno Dep. 122:20–124:7.) Defendants acknowledge that the Selective List was created, but maintain that Plaintiff was disqualified based on his position on the Promotion List. (Defs.' 56.1 ¶ 13 n.4). "Paterno Dep." refers to the deposition of John Paterno, starting at page 2 of Document 75-3 and ending on page 33 of Document 75-4.

[8] It is unclear whether the Interview List, (*see* Doc. 69-10, at 6–11), is the same document as the one that parties refer to as the Selective List.

[9] In addition to a copy of the list with the disposition date June 4, 2013, which both Plaintiff and Defendants attach

Once the promotion decisions were made, Plaintiff was returned to his permanent Auto Mechanic civil service title. (*See* Defs.' 56.1 ¶ 19; Espinoza Decl. ¶ 87; Doc. 69-10, at 12.) Jean Frankowski, the Director of Personnel at the DOT, sent Plaintiff a letter on May 22, 2013 informing him that he would lose his provisional SOMME title on June 8, 2013 and return to his Auto Mechanic title as of June 9, 2013. (*See* Espinoza Decl. ¶ 87; Doc. 69-11, at 2.) The letter stated: "This is to inform you that due to the promulgation of the civil service list for Supervisor of Mechanics (Mechanical Equipment), a title you now hold provisionally, it will become necessary to terminate your provisional services effective June 8, 2013." (Doc. 69-11, at 2.) This was, according to Plaintiff, the first time he had learned that he would lose his provisional SOMME title. (Espinoza Decl. ¶ 87.) Out of the seven candidates who were provisional SOMMEs, three, including Plaintiff, were returned to their permanent underlying titles, and the other four were hired as permanent SOMMEs based on their scores on the list. (*Id.* ¶ 88; *see also* Doc. 69-10, at 12.)

## C. *Plaintiff's Notice of Discrimination*

On February 21, 2014, Plaintiff filed a notice of charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" and "EEOC Charge"). (Defs.' 56.1 ¶ 4; Pl.'s Resp. 56.1 ¶ 4; *see also* Doc. 69-1.) In the EEOC Charge, Plaintiff alleged that he was discriminated against based on his race and national origin because his salary was reduced and his title was changed to Auto Mechanic, while a co-worker who was not African-American maintained his provisional title. (Doc. 69-1, at 2–4, 6.) The co-worker who Plaintiff referenced was employed by the Department of Sanitation ("DOS") and did not take the civil service

---

as exhibits, (*see* Doc. 75-7, at 17; Doc. 69-10, at 6), Defendants also attached a list with disposition date September 13, 2013 which states that the document was "[r]eturned" and "not used," (Doc. 69-9, at 2). This list states that no additional appointments were made, (*id.*), and, consistent with the June list, states that Plaintiff was number 51 on the Promotion List, (*id.* at 21).

examination.  (*Id.* at 6.)  On December 9, 2014, the EEOC issued a determination that it was

"unable to conclude that the information obtained establishes violation of the statutes," and along

with that determination it issued a notice of the right to file a lawsuit in federal or state court

within ninety days of receipt.  (Defs.' 56.1 ¶ 6; Pl.'s Resp. 56.1 ¶ 6; *see also* Doc. 69-2, at 2.)

## II.    Procedural History

Plaintiff commenced this action on February 13, 2015.  (Doc. 2.)  He moved to proceed

in forma pauperis, so that he could proceed without prepayment of fees, on the same day.

(Doc. 1.)  Plaintiff's application to proceed in forma pauperis was granted on February 17, 2015.

(Doc. 3.)  On February 23, 2015, the case was assigned to me.  (Dkt. Entry Feb. 23, 2015.)

After granting Defendants' request for extension of time to respond to the Complaint,

(Doc. 9), on July 13, 2015, I granted Defendants' request for a pre-motion conference regarding

their anticipated motion to dismiss, (Doc. 11).  Plaintiff submitted a response to Defendants' pre-

motion letter on July 28, 2015, (Doc. 12), and I held the pre-motion conference on August 14,

2015, (*see* Dkt. Entry Aug. 14, 2015).  Shortly thereafter, I granted Defendants leave to file a

motion to dismiss the Complaint.  (Doc. 16.)  Defendants filed their motion to dismiss,

memorandum of law, and declaration in support of the motion on October 23, 2015.  (Docs. 17–

19.)

On November 23, 2015, Plaintiff filed the First Amended Complaint ("FAC"), which was

amended for the purpose of including additional defendants.  (Doc. 20.)  On December 2, 2015,

Defendants requested an extension of time to respond, which I granted.  (Doc. 23.)  Defendants

then filed their answer to the FAC on January 20, 2016.  (Doc. 25.)

Based on the FAC, on February 18, 2016, I ordered service on an additional three

defendants—Michael Krafinski, John Paterno, and Basil Ciraolo (collectively, the "Individual

Defendants"). (Doc. 27.) The Individual Defendants were served on April 7, 2016. (*See* Docs. 30–32.) Thereafter, on June 1, 2016, the Individual Defendants filed their answer to the FAC. (Doc. 34.)

On August 11, 2015, the Individual Defendants together with the Defendants as defined in the instant Opinion and Order filed a pre-motion letter requesting a conference with respect to their anticipated motion for judgment on the pleadings, (Doc. 39), to which Plaintiff replied on August 18, 2016, (Doc. 41). I granted the request for a pre-motion conference and held the conference on October 24, 2016. (*See* Dkt. Entry Oct. 24, 2016.) Pursuant to the conference, I issued an order (1) extending discovery, (2) directing parties to submit an amended case management plan reflecting revised discovery deadlines, and (3) directing the parties to confer and submit a joint letter indicating whether Plaintiff would amend the complaint for a second time. (Doc. 44.) Defendants submitted a proposed amended case management plan on October 27, 2016, (Doc. 45), and a status report on November 14, 2016 informing me that the parties had reached an agreement and that a stipulation was forthcoming, (Doc. 49). On November 23, 2016, the parties filed a stipulation stating that Plaintiff would agree to the dismissal of claims, with prejudice, against the Individual Defendants, and that Plaintiff would file a second amended complaint. (Doc. 52.)

Plaintiff filed the SAC on November 23, 2016, (Doc. 53), and at Defendants' request I held another pre-motion conference on April 13, 2017, (*see* Dkt. Entry Apr. 13, 2017). Pursuant to that conference, and as discussed on the record, I issued an order directing Defendants to file their motion for summary judgment by May 25, 2017, and setting briefing deadlines for the opposition and reply. (Doc. 64.) After one extension of time, (Doc. 66), on July 13, 2017, Defendants filed their motion for summary judgment, along with a memorandum of law and

supporting papers, (Docs. 67–70).  Plaintiff filed his opposition on October 20, 2017, (Doc. 75), and Defendants filed their reply on November 9, 2017, (Doc. 78).

### III.  Legal Standards

#### A.  *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address

another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Additionally, the court must exercise "an extra measure of caution" in determining whether to grant summary judgment in employment discrimination cases "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)). Nevertheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

### B.    *Pro Se Litigant*

Pro se litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and opposition papers of pro se litigants "liberally and interpret them to raise the strongest arguments

that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)); *see also Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) ("District courts should read the pleadings of a pro se plaintiff liberally[,] and [the] same principles apply to briefs and oppositions submitted by pro se litigants." (internal quotation marks omitted)).

However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV.   Discussion

Plaintiff claims that Defendants discriminated against him based on his race, color, religion, and national origin pursuant to Title VII, the NYSHRL, and the NYCHRL.  (*See* SAC 1–3.)  As an initial matter, in his opposition to Defendant's summary judgment motion, Plaintiff, for the first time, raises several new claims:  (1) a Title VII disparate impact claim based on the results of the DOT's selection process; (2) a Title VII claim based on failure to provide an alternate title; (3) a Title VII claim based on failure to promote prior to Plaintiff's change in title; (4) a Title VII retaliation claim; (5) violations of 42 U.S.C. § 1981; and (6) violations of 42

U.S.C. § 1983.  (*See* Pl.'s Opp. 4.)[10]

Although a pro se plaintiff's pleadings must be liberally construed, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), I will only consider Plaintiff's disparate treatment claim regarding his change in title from Provisional Supervisor of Mechanics and Mechanical Equipment to Auto Mechanic, which he sets forth clearly in his pleadings, (*see* SAC 1–3 (stating that Plaintiff brings this action pursuant to Title VII, NYSHRL, and NYCHRL, and that the "discriminatory conduct of which [he] complain[s] in this action" is "[d]emotion of job title and reduction in salary and benefits").)  It is "inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion" because it fails to "give defendants fair notice of the nature of the plaintiff's claim" and thus undermines the purpose of Federal Rule of Civil Procedure 8(a). *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001); *see also Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense." (citation omitted)).  In fact, in the Complaint, FAC, and SAC, Plaintiff did not check the boxes for "[f]ailure to promote" or "[u]nequal terms and conditions of . . . employment," and only checked the box for "[o]ther acts" and stated that "[d]emotion of job title and reduction in salary" was the discriminatory conduct that formed the basis of his claim.  (*See* Compl. 2–3; FAC 2–3; SAC 2–3.)[11]  Further, while "[o]rdinarily, a district court presented with such a situation could grant plaintiff leave to amend [the] complaint," *Thomas*, 1 F. App'x at 54, Plaintiff has already been provided with two

[10] "Pl.'s Opp." refers to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed October 20, 2017.  (Doc. 75.)

[11] "Compl." refers to Plaintiff's Complaint, filed February 13, 2015.  (Doc. 2.)  "FAC" refers to Plaintiff's First Amended Complaint, filed November 23, 2015.  (Doc. 20.)

opportunities to amend his complaint.

Because Plaintiff had ample opportunity to raise his additional claims and failed to do so until the summary judgment stage, I will not grant Plaintiff leave to amend nor consider his additional claims. Thus, I will only consider Plaintiff's Title VII, the NYSHRL, and NYCHRL claims for race, color, religion, and national origin discrimination, which I analyze in turn below.

### A. *Timeliness and Exhaustion*

#### 1. Applicable Law

Before a plaintiff can file a Title VII complaint in federal district court, the plaintiff must exhaust all available administrative remedies—he or she must file a timely charge of discrimination with the EEOC and receive a letter providing for the right to sue. *See Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."). This requirement is essential to the Title VII scheme because it "serves to give the administrative agency the opportunity to investigate, mediate, and take remedial action, and enables the EEOC to provide the alleged wrongdoer with notice and to permit possible conciliation." *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 462 (S.D.N.Y. 2005) (citations and internal quotation marks omitted). Thus, administrative exhaustion is required for both pro se plaintiffs as well as those who have retained counsel. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).

"In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

109 (2002); *see also* 42 U.S.C. § 2000e-5(e)(1). "Because New York has its own antidiscrimination laws and enforcement agency, it is a so-called deferral state, and the 300 days limitation applies generally." *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 n.4 (S.D.N.Y. 2004); *see also Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133–34 (2d Cir. 2003).

If a plaintiff alleges discriminatory behavior taking place before the applicable 300-day period, "'the nature of the claim' determines the treatment of the prior conduct." *Anyanwu v. City of New York*, No. 10 Civ. 8498(AJN)(THK), 2013 WL 5193990, at *9 (S.D.N.Y. Sept. 16, 2013) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004)). If the plaintiff alleges discrimination based on specific actions taken by his or her employer, also called a disparate treatment claim, "each 'termination, failure to promote, denial of transfer, or refusal to hire' is considered a 'discrete act' that triggers the running of the limitations period." *Id.* (quoting *Morgan*, 536 U.S. at 114). If, on the other hand, the plaintiff alleges continuous conduct amounting to discrimination, or a disparate impact claim, "plaintiff need only show that part of the violation took place within the limitations period" and once the plaintiff meets that burden, the court may consider all related conduct—even if outside of the 300-day window. *Id.*

The time begins to run for each discrete discriminatory act when the plaintiff "knew or had reason to know of the injury serving as the basis for [the] claim." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). A plaintiff is found to know or have reason to know of the injury when he or she "receives notice of the allegedly discriminatory decision." *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir. 1985); *see also Jordan v. Bates USA*, 4 F. App'x 73, 76 (2d Cir. 2001) ("Indeed, we have expressly stated that 'the 300 day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice

of the termination, not upon his discharge' . . . . " (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755

F.2d 20, 23 (2d Cir. 1985))).  Failure to file a charge with the EEOC within 300 days of that date

bars a plaintiff from bringing an action with respect to that claim.  *Hill*, 312 F. Supp. 2d at 472–

73.

## 2. Application

Because Plaintiff's claim in the instant action is predicated on a specific act—namely, his

change in title from provisional SOMME to Auto Mechanic, (*see* SAC 3)—Plaintiff's claim is a

disparate treatment claim and the "discrete act" must fall within the 300-day period, *see Morgan*,

536 U.S. at 114.  Plaintiff filed his charge with the EEOC in February 2014, (Defs.' 56.1 ¶ 4),

and thus any actions occurring prior to April 27, 2013—300 days prior—cannot be considered,

*see Hill*, 312 F. Supp. 2d at 472 n.4.

Although Defendants argue that Plaintiff's claims all arise out of conduct occurring

before April 27, 2013, and thus must be dismissed, (*see* Defs.' Mem. 3.),[12] I find that the actions

forming the basis for Plaintiff's disparate treatment claim properly fall within the 300-day

limitations period.  Defendants argue that "civil service law is clear that provisional employees

may not retain employment after the establishment of the eligible list" and thus "Plaintiff's cause

of action began to accrue when he was placed on the February 27, 2013 DCAS promotional

SOMME list, on which he was unreachable."  (Defs.' Reply 3.)[13]  However, Defendants do not

identify evidence in the record demonstrating or even suggesting that Plaintiff was given notice

of his impending change in title at the time he was placed on the Promotion List.  The DOT sent

---

[12] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, filed July 13, 2017.  (Doc. 70.)

[13] "Defs.' Reply" refers to Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment, filed November 9, 2017.  (Doc. 78.)

Plaintiff a letter on May 22, 2013 informing him that he would lose his provisional SOMME title effective June 9, 2013.  (Defs.' 56.1 ¶¶ 3, 18; Pl.'s Resp. 56.1 ¶ 3, 18; Espinoza Decl. ¶ 87.)  Based upon the record before me, I find that this was the first time that Plaintiff was informed of his change in title, (Espinoza Decl. ¶ 87), and therefore the time that he "knew or had reason to know" of the injury, *Harris*, 186 F.3d at 247.  Thus, even though he was placed as number fifty-one on the Promotion List on February 27, 2013, and according to Defendants was put in an "unreachable" position at that time, (Defs.' Mem. 4), the relevant date for the purpose of the Title VII claim is May 22, 2013, when he was informed that his title would revert back to Auto Mechanic, (*see* Defs.' 56.1 ¶ 18; Espinoza Decl. ¶ 87).  Because May 22, 2013 is within the 300-day window, Plaintiff's discrimination claim with respect to his change in title is properly considered in this Court.[14]

### B.   *Title VII and NYSHRL Claims*

Plaintiff alleges that Defendants violated Title VII and the NYSHRL on the basis that Defendants changed his title from provisional SOMME to Auto Mechanic and thus discriminated against him based on his race, color, religion, and national origin.  (*See* SAC 1–3, 6–7.)  Because Plaintiff has not met his burden of establishing a prima facie case of discrimination, Plaintiff's claims fail.

### 1.  Applicable Law

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or

---

[14] Because, as stated above, the disparate treatment claim is the only claim that was properly pled, and thus the only claim I consider, any allegedly discriminatory act occurring prior to the 300-day limitations period and not related to Plaintiff's change in title from provisional SOMME to Auto Mechanic will not be considered.  *See Anyanwu*, 2013 WL 5193990, at *9 (stating that when a plaintiff's claims are based on "discrete acts" such not being selected for a new position, a plaintiff "may base his claims only on events that took place during the relevant limitations periods" and "any federal claims arising before [the 300-day period] are time-barred").

privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Courts in this Circuit analyze federal and state discrimination claims together, and apply the same standard of proof with respect to both Title VII and NYSHRL claims.  *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (analyzing Title VII and NYSHRL claims together and considering them "the same in all relevant respects" because "in other contexts [the Courts] have applied federal standards of proof to discrimination claims under the state Human Rights Law").

Under Title VII and the NYSHRL, discrimination claims based on race, color, religion, and national origin are analyzed under the familiar three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Mandell*, 316 F.3d at 377 (religious discrimination claims under Title VII and the NYSHRL); *Risco v. McHugh*, 868 F. Supp. 2d 75, 99–100 (S.D.N.Y. 2012) (race and color discrimination claims under Title VII); *Crawford-Bey v. N.Y. & Presbyterian Hosp.*, No. 08 Civ. 5454(RJS), 2011 WL 4530193, at *3 (S.D.N.Y. Sept. 30, 2011) (race discrimination claims under Title VII and the NYSHRL); *Kumar v. N.Y.C. Sch. Constr. Auth.*, No. 10 Civ. 3559(PKC)(FM), 2011 WL 5929005, at *6–7 (S.D.N.Y. Nov. 29, 2011) (national origin discrimination claims under Title VII and the NYSHRL).  Under the *McDonnell Douglas* framework, the employee bears the burden of setting forth a prima facie case of discrimination.  *See* 411 U.S. at 802.  To state a prima facie case, a plaintiff must show (1) he belongs to a protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.  *See id*.  The "burden of establishing a *prima facie* case is *de minimis*."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (collecting cases).  To establish an inference of discrimination, a plaintiff must often

rely on indirect evidence of discrimination.. *See Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991) ("A victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.").

If a plaintiff successfully presents a prima facie case of discrimination, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for the adverse employment action. *See Abdu-Brisson*, 239 F.3d at 466, 468–69. The defendant's burden at this stage is also "light," *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998), and the employer "does not need to prove by a preponderance of the evidence that the rationale was not discriminatory, but must present a clear explanation for the action," *Pathare v. Klein*, No. 06-Civ. 2202(LTS)(DCF), 2008 WL 4210471, at *4 (S.D.N.Y. Sept. 12, 2008). This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Although the burden of production shifts, "the ultimate burden of persuading the trier of fact of intentional discrimination remains at all times with the plaintiff." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997).

The burden then shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the proffered reason is a pretext for discrimination. *See United States v. City of New York*, 717 F.3d 72, 102 (2d Cir. 2013); *Holcomb*, 521 F.3d at 141. However, a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Holcomb*, 521 F.3d at 138 (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)); *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d

134, 156 (2d Cir. 2010) ("[A] plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus.").

In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). "To get to the jury, 'it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (quoting *St. Mary's*, 509 U.S. at 519), *cert. denied*, 540 U.S. 811 (2003); *see also Schnabel v. Abramson*, 232 F.3d 83, 90–91 (2d Cir. 2000) (affirming summary judgment in favor of defendant where plaintiff failed to present evidence upon which a reasonable jury could conclude that age was a "determinative factor" in adverse employment action). "Though the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' it may often be carried by reliance on the evidence comprising the prima facie case, without more." *Cronin*, 46 F.3d at 203 (2d Cir. 1995) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

### 2. Application

Defendant does not contest the first and third prongs of the *McDonnell Douglas* prima facie framework—that Plaintiff is a member of a protected class and that he suffered an adverse employment action. (*See* Defs.' Mem. 1–2.) Plaintiff is a Rastafarian African-American male from Trinidad and Tobago, (Espinoza Decl. ¶ 2), and thus belongs to a protected class. Further, he suffered an adverse employment action because on June 9, 2013, Plaintiff was returned to his

permanent Auto Mechanic title, which is a "less prestigious" title with a "significant pay cut." (*Id.* ¶ 89.) Because this constituted a "materially adverse change" in his employment that was "more disruptive than a mere inconvenience or alteration of job responsibilities," the adverse employment prong of the *McDonnell Douglas* analysis is satisfied. *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) ("Employment actions that [the Second Circuit has] deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." (internal quotation marks omitted)).

With respect to the second prong—whether Plaintiff was qualified for continued employment—Defendants argue that "he was objectively deemed not qualified for the permanent SOMME appointment because his low score on the civil service examination rendered him unreachable on the promotion list." (Defs.' Mem. 1.) I find Defendants' argument unpersuasive, because it rests on Plaintiff's relative test results. There is no evidence that applicants who scored below a certain number would be ineligible for the permanent SOMME appointment— whether an applicant would be found qualified under Defendants' scheme depends upon how a particular applicant did on the exam relative to others who took the exam at the same time.

Plaintiff did meet the minimum requirements for the application itself: he was a DOT employee, had a qualifying title, and had the correct type of license, which qualified him to be included on the Promotion List. (*See* Defs.' 56.1 ¶ 17; Espinoza Decl. ¶¶ 72, 74, 80.) The fact that he was initially placed on the Promotion List suffices to demonstrate he was qualified. *See*

*De La Cruz v. N.Y.C. Human Res. Admin.*, 82 F.3d 16, 20 (2d Cir. 1996) (stating that a plaintiff

"need only demonstrate that he 'possess the basic skills necessary for performance of the job'" to

show he was qualified for the position under the *McDonnell Douglas* framework (quoting *Powell*

*v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978), *cert. denied*, 439 U.S. 984 (1978))).

Plaintiff's claim fails, however, because he fails to satisfy his burden of proving

circumstances that give rise to an inference of discrimination. An inference of discrimination

can be proven through a variety of methods, including "the employer's criticism of the plaintiff's

performance in ethnically degrading terms; or its invidious comments about others in the

employee's protected group; or the more favorable treatment of employees not in the protected

group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New*

*York*, 795 F.3d 297, 312 (2d Cir. 2015) (internal quotation marks omitted).[15]

As an initial matter, Plaintiff was a provisional employee who, under New York's Civil

Service Laws, must be "terminated within two months following the establishment of an

appropriate eligible list for filling vacancies in such positions." N.Y. Civil Serv. Law § 65(3).

Even if no eligible list was created, his employment could only continue for nine months. *See id.*

§ 65(2). There is no indication that the DOT's conduct violated these procedures as set forth

under New York law. Although typically, the fact that a plaintiff is replaced by one outside of

---

[15] In his opposition, Plaintiff points to the "ample record of discriminatory actions made clear in . . . the Department of Justice's Civil Rights case against the DOT for a pattern and practice of discrimination against non-whites" to prove circumstances giving rise to an inference of discrimination. (Pl.'s Opp. 21.) This, however, is a generalized allegation that fails to provide any evidence that Plaintiff's specific change in title was motivated by his race, color, national origin, or religion. *See Dickens v. Hudson Sheraton Corp.*, 167 F. Supp. 3d 499, 520 (S.D.N.Y. 2016) (granting summary judgment where there was "no evidence from which a jury could infer that defendants' conduct . . . was motivated, even in part, by discriminatory animus."); *see also Scaria v. Rubin*, No. 94 CIV. 3333 AJP SAS, 1996 WL 389250, at *5 (S.D.N.Y. July 11, 1996) ("[C]ourts in the Second Circuit have not hesitated to grant defendants summary judgment in cases where, as here, plaintiff has offered little or no evidence of discrimination."), *aff'd*, 117 F.3d 652 (2d Cir. 1997). Thus, Plaintiff cannot rely on this report to provide an inference of discrimination for an individual disparate treatment claim—although evidence and statistics regarding past discrimination are heavily relied upon and are "a mainstay of pattern or practice claims; the same is not true . . . of individual disparate treatment claims." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 77 (2d Cir. 2016).

the protected class—in this case a Caucasian male—may be enough to evidence an inference of discrimination, *see Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001), this case presents different facts because Plaintiff was a provisional SOMME and never permanently gained that title, (*see* Defs.' 56.1 ¶ 12; Pl.'s Resp. 56.1 ¶ 12).  Because the new positions were for permanent SOMME titles, those that were selected did not directly replace Plaintiff.  In addition, Plaintiff states that two African-American males, numbers seven and fourteen on the list, were ultimately promoted to the SOMME position.  (Espinoza Decl. ¶ 103.)

Plaintiff further fails to show that he was treated differently than someone similarly situated because of his race, color, religion, or national origin.  *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) ("A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie case of discrimination." (quoting *Abdu-Brisson*, 239 F.3d at 468)).  Although Plaintiff claims that one of the Caucasian candidates who was promoted "had significantly less experience than those minority candidates who were passed over," (Espinoza Decl. ¶ 85), he does not provide evidence that the Caucasian candidate scored similarly on the exam or that at number fifty-one on the list, Plaintiff himself was passed over for promotion in favor of a Caucasian candidate.  In fact, at least two other provisional SOMMEs, both of whom were Caucasian, were returned to their original titles in the same fashion as Plaintiff.  (Defs.' 56.1 ¶ 19; Espinoza Decl. ¶ 88.) Those who were permanently appointed scored significantly higher on the exam, (*see* Doc. 69-10, at 6–11), and were interviewed and selected based upon their position on the list, which was determined solely by their score once the minimum requirements of being a DOT employee, having a qualifying title, and having the correct type of license were met.  Plaintiff's argument that he was treated differently than a Caucasian DOS provisional SOMME employee who did

not have to take a civil service exam—and that he was not "placed into an exempt position, a non-competitive class position, or . . . into an appropriate civil service title for which there was no civil service list" (Pl.'s Opp. 19)—also fails because the DOS and the DOT are separate employers with separate employment requirements.

Plaintiff claims that there was a "selective certification list which permitted management to reach a candidate who might not have been reachable on the main list," (Pl.'s Resp. 56.1 ¶ 13), and that his supervisor, Paterno, "intentionally left [Plaintiff's] name off the Selective Certification List," (SAC 6; *see also* Espinoza Decl. ¶¶ 79–81). Plaintiff, however, has not provided evidence, other than conclusory statements, that he was in fact left off of the Selective List because of a protected characteristic, or that the DOT's decision not to interview him was in any way discriminatory. The Selective List was merely a list of people who passed the civil service exam and had a Class A Driver's License, and as Paterno states in his deposition, he only ever saw the first twenty seven people on the Selective List for the purpose of conducting interviews. (Paterno Dep. 124:14–23.) Only those that had the highest test scores on the Promotion List were interviewed. (*See* Doc. 69-10, at 6–11 (listing those that were interviewed based on their rank on the Promotion List); Doc. 75-9, at 10–11 (marking the candidates that were interviewed for the position, and showing that only those at the top of the promotion list were interviewed).) Both the list provided by Plaintiff, (*see* Doc. 75-7, at 17), and the list provided by Defendants, (*see* Doc. 69-10, at 6), dated June 4, 2013, include Plaintiff and state that Plaintiff was number fifty-one on the Promotion List. Another copy of the list dated September 13, 2013 provided by Defendants also shows Plaintiff as number fifty-one and is consistent with the June list. (Doc. 69-9, at 2.) Thus, Plaintiff has offered no evidence that there was any discriminatory intent on the part of the DOT or Paterno so as to create an inference of

discrimination sufficient for a prima facie showing.

Although Plaintiff is a member of a protected class, was qualified for the permanent SOMME position, and suffered an adverse employment action in the form of lower salary and title, he has not provided sufficient evidence to give rise to an inference of discrimination. Thus, Plaintiff has failed to establish a prima facie case of discrimination under the first stage of *McDonnell Douglas*, and Defendant's motion for summary judgment with respect Plaintiff's Title VII and NYSHRL claims is granted.

## C.     *NYCHRL Claims*

Plaintiff also brings discrimination claims under the NYCHRL. (*See* SAC 1.) Having dismissed all of Plaintiff's federal claims, as well as the NYSHRL claims governed under the same standards as their federal counterparts, I decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims for the following reasons.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims. *See, e.g.*, *Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454(RA), 2014 WL 941821, at *1–2 (S.D.N.Y. Mar. 11, 2014) (declining to exercise jurisdiction over NYHSRL and NYCHRL claims); *Algarin v. City of New York*, No. 12 Civ. 1264(LTS), 2012 WL 4814988, at *4 (S.D.N.Y. Oct. 10, 2012) (declining to exercise jurisdiction over New York State Executive Law § 296 and NYCHRL claims); *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 402 (S.D.N.Y. 2011) (declining to exercise jurisdiction over NYSHRL and NYCHRL claims). Furthermore, "comity counsels against exercising jurisdiction over [a plaintiff's] NYCHRL claim[s], as the NYCHRL has a lower threshold of proof than its

federal counterparts and has been applied primarily at the intermediate appellate level of the state courts, with limited opportunity for the New York Court of Appeals to construe it." *Harris*, 2014 WL 941821, at *2 (internal quotation marks omitted).

I have dismissed all claims over which I had original jurisdiction, as well as any state law claims governed under the same standards as their federal counterparts. Accordingly, I decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims, and these claims are dismissed without prejudice to re-filing in state court.

## V.      Conclusion

Because Plaintiff has failed to establish a prima facie case of discrimination under *McDonnell Douglas*, Defendant's motion for summary judgment is GRANTED as to Plaintiff's Title VII and NYSHRL claims. I decline to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims, and therefore Defendants' motion for summary judgment with regard to this claim is DENIED. Plaintiff's NYCHRL claims are dismissed without prejudice to their re-filing in state court. The Clerk of the Court is respectfully requested to enter judgment for Defendants and close this case.


SO ORDERED.

Dated: March 30, 2018
        New York, New York

Vernon S. Broderick
United States District Judge